**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

EDMUND ARTHUR GRESS,      )
     *Plaintiff*,      )
     )     CASE NO. 3:21-cv-1066 (OAW)
     v.      )
     )
LOUIS DEJOY,      )
     *Defendant*.      )
     )
     )

<u>**RULING ON DEFENDANT'S MOTION TO DISMISS**</u>

**THIS ACTION** is before the court upon Defendant's Omnibus Motion to Dismiss Plaintiff's Amended Complaint.  ECF No. 31.  The court has reviewed the motion, Plaintiff's opposition thereto, ECF No. 37, Defendant's reply in support thereof, ECF No. 39 and the record in this case.  For the reasons discussed herein, the motion is <u>**GRANTED in part**</u> and is <u>**DENIED in part**</u>.

## I.    PROCEDURAL BACKGROUND

Self-represented Plaintiff Edmund Gress filed an employment discrimination action with this court on August 4, 2021.  *See* Compl., ECF No. 1.  That same day, he separately filed a motion to appoint counsel, *see* ECF No. 2, which was denied without prejudice, *see* ECF No. 8 (Hon. Kari A. Dooley, J.), and a motion to reconsider, *see* ECF No. 11 (filed as an objection to ECF No. 8), which also was denied, *see* ECF No. 12 (Dooley, J.).

Thereafter, on December 15, 2021, the case was transferred to the undersigned. *See* ECF No. 15.

1

On February 24, 2022, the undersigned denied Plaintiff's motion to dismiss initial discovery protocols, instructing Plaintiff to file an amended complaint with "a detailed description of the factual allegations in support of his claims."  ECF No. 24.

In response, Plaintiff filed four separate complaint forms on May 2, 2022.  *See* ECF Nos. 27 [hereinafter "Amended Compl. #1"]; 28 [hereinafter "Amended Compl. #2"]; 29 [hereinafter "Amended Compl. #3"]; and 30 [hereinafter "Amended Compl. #4"].

On May 26, 2022, the government filed an omnibus motion to dismiss Plaintiff's amended complaints.  ECF No. 31.  Plaintiff filed his response on July 22, 2022, ECF No. 37, and the government filed its reply on August 4, 2022, ECF No. 39.

## II.   FACTUAL BACKGROUND

The following factual background is intended to reduce any confusion that otherwise might have been caused by the numerous and simultaneous amended complaints.  In reviewing Plaintiff's filings, the court construes the four separate docket entries, *see* ECF Nos. 27–30, to comprise a single amended complaint.[1]

---

[1] In considering the defendants' motion to dismiss, district courts are required to interpret a pro se complaint liberally.  *See Sauce v. Bauer*, 585 U.S. 957, 960 (2018).  Therefore, the complaint must be construed to raise the strongest arguments it suggests.  *See McCray v. Lee*, 963 F.3d 110, 116–17 (2d Cir. 2020) (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).  The court may stitch together arguments made across multiple filings in identifying the strongest argument.  *See Rosa v. Doe*, 86 F.4th 1001, 1010 (2d Cir. 2023) (taking notice of factual allegations raised in a motion to appoint counsel for pro se plaintiff's benefit in a motion for leave to proceed in forma pauperis).

Here, Plaintiff's four amended complaint filings each raise differing legal and factual allegations.  Exhibits attached to each of the amended complaint forms also differ.  All four amended complaints were dated and filed on the same day.  This leads the court to believe that these four complaints are to be reviewed together.  To the extent that each amended complaint was intended to supersede one another, the court still takes from each filing, allegations that are relevant to raise the strongest possible argument in Plaintiff's favor.  *See id.*; *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (relaxing the limitations on the amendment of pleadings).

Plaintiff Gress is a rural carrier with the United States Postal Service in Guilford, Connecticut.  *See* Amended Compl. #4, at 7.  He brings claims of sexual harassment and retaliation against Defendant Louis DeJoy, in his capacity as the United States Postmaster General, alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2]

The four amended complaints raise several instances of alleged harassment and retaliation against numerous members of Plaintiff's local office.

In one such amended complaint, Plaintiff claims that he was refused a position of "PTF" on August 10, 2019, when Lisa Millet (the postmaster for his local office) "denied" him his right to the position.  Amended Compl. #1 at 2–3.  He claims in the form itself, and with exhibits, that he filed a grievance form within the office, as well as a complaint with the Equal Employment Opportunity Commission ("EEOC").  *See id.* at 7–8. Particularly, he attached as an exhibit a post-conference order from the EEOC which summarizes the conference and instructs Plaintiff as to next steps.  *See id.* at 8–11.

In another amended complaint, Plaintiff claims that he is "instructed to work directly and in front of the accused on all related matters to this case."  Amended Compl. #2 at 2. He cites to "standing instructions and parameters" under which he is to defend himself and claims that there is a "recording from one of the accused that clearly states [his]

---

[2] The court notes that some of the amended complaints seem to allege a claim for age-based employment discrimination.  *See* Amended Compl. #1, at 3 (checking the box for age-based discrimination despite having indicated earlier in the complaint that he is bringing a Title VII claim); Amended Compl. #4, at 3 (same); Amended Compl. #2, at 3; *see also* Compl. 3, ECF No. 1 (checking the box for age-based discrimination even in the original complaint).  However, Plaintiff has not asserted any factual allegations that pertain to his claim for age-based discrimination.  In the original complaint, where Plaintiff also identified "age" as the basis of discrimination, he alleged that the Defendant's conduct amounts to "Sexual and retaliatory harassment."  Compl. 3, ECF No. 1.  The amended complaints, and Plaintiff's response to the instant motion to dismiss, likewise do not raise any relevant factual claims.  Therefore, the court only will consider Plaintiff's claims for sex-based discrimination and retaliatory harassment.

claims." *Id.*  In the same form, Plaintiff further alleges that he is "being intimidated" and that "his constitutional rights [are] violated by this behaviour."  *Id.* at 3.  Attached to this specific amended complaint is a written statement from an individual who attests to being present during a conversation with Plaintiff and Ana Anes (one of Plaintiff's supervisors) when Plaintiff was "told he must do any work pertaining to his case in the safety room at the Annex," *id.* at 7, and a copy of the same EEOC post-conference order, *id.* at 8–9.

In a third amended complaint, Plaintiff claims that he was subject to "[s]exual harassment leading to retaliatory harassment, followed by personal endangerment." Amended Compl. #3, at 2.  He alleges that "[t]he claim of a sexual overture on or around May 25th, 2020 was followed by pay misconduct by moving my truck to unauthorized locations throughout June, which when resolved in [his favor] was followed by conduct that put [him] in personal and emotional danger."  *Id.*  Plaintiff claims on the form that there are too many facts to present, and instead references attached exhibits.  *Id.* at 3.  The exhibits include:  a case incident report from the Guilford Police Department, pages from an EEO Investigative Affidavit, instructions on filing PS Form 2565 for discrimination at the workplace, the same EEOC post-conference order, an inquiry report from the EEO alternative dispute resolution specialist, and pages from an investigative summary for an agency case that reflects Plaintiff's name.  *See id.* at 7–19.[3]

---

[3] The report from Guilford Police Department contains a summary of Plaintiff's description of events that occurred on June 2, 2020.  *See* Amended Compl. #3, at 7–9.  The report indicates that Plaintiff had an interaction with a customer on his mail delivery route which led to a verbal confrontation.  *See id.*

One page of the investigative affidavit contains statements from Plaintiff's union steward (Albert Pallotto) about the alleged incident referenced in the police report.  *See id.* at 10.  The second page contains steps taken by the union steward in raising this issue with Plaintiff's supervisor.  *See id.* at 11.

The first page of the inquiry report from the EEO's alternative dispute resolution specialist details the claims Plaintiff made pertaining to "non-scheduled days off" and other "grievances."  *Id.* at 15.  The second page of the report also reflects Plaintiff's claim against his supervisors.  *See id.* at 16.

Lastly, in a fourth amended complaint, Plaintiff claims that "[o]n or about 12/19/16 [he] endured torturous retaliation by being made to stand in freezing rain until soaked thoroughly."  Amended Compl. #4, at 2.  Plaintiff further alleges that being made to stand in the rain was retaliation for "informing the union" of his sexual harassment concerns.  *Id.* at 3.  Attached to this amended complaint are a copy of his grievance form related to being made to stand out in the rain, and the same copy of the EEOC post-conference order that he affixed to each of the four amended complaints.  *See id.* at 7, 9–12.

On May 26, 2022, Defendant filed an omnibus motion, asking the court to dismiss Plaintiff's several amended complaints.  *See* Omnibus Mot. to Dismiss, ECF No. 31.  In the supporting memorandum of law, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff has failed to include "a detailed description of the factual allegations in support of his claims."  *See* Mem. of Law in Supp. of Mot. to Dismiss 10, ECF No. 31-1 [hereinafter "Mot. to Dismiss"].  Defendant also argues that Plaintiff has failed to comply with this court's orders from February 24, 2022, and March 31, 2022.  *Id.* at 9–10.  Each such order instructed Plaintiff to state precise factual allegations giving rise to his claims.  *See* Order, ECF No. 24; Order, ECF No. 26.

Plaintiff filed his response on June 10, 2022.  *See* Resp. to Mot. to Dismiss, ECF No. 37.  In his response, Plaintiff detailed instances of alleged sexual harassment and retaliatory harassment which were not discussed in the amended complaints.  *See, e.g.*, *id.* at 3 (detailing the attempts that Lisa Millet made to initiate physical contact); *id.* at 6

---

One page of the investigative summary contains the internal steps taken after Plaintiff had a verbal confrontation with a customer on his delivery route.  *See id.* at 17.  The other page of the summary contains a resolution of Plaintiff's claim regarding the customer with whom Plaintiff had a confrontation. *See id.* at 19.

(detailing the time that his supervisor withheld pay for taking time at home to file an EEOC complaint).  Plaintiff also includes statements about the effect that these alleged instances of harassment has had on his health.  *See id.* at 3.

Defendant filed his reply on August 4, 2022, raising, again, his initial argument that Plaintiff has failed to raise a claim upon which relief can be granted. *See* Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss 1, ECF No. 39.

## III.   <u>LEGAL STANDARD</u>

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id.*  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.*  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor.  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).  In a *pro se* action such as this, the court must construe the plaintiff's

complaint "even more liberally."  *LaBounty v. Coughlin*, 137 F.3d 68, 71 (2d Cir. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)).

## IV.   DISCUSSION

Defendant argues that the court should dismiss Plaintiff's amended complaints because they fail to state a claim upon which relief can be granted.  Mot. to Dismiss 10. Plaintiff has filed four different amended complaints, each containing different exhibits, pleadings, and claims.  The court liberally construes these four filings to comprise a single amended complaint.  *See Rosa v. Doe*, 86 F.4th 1001, 1010 (2d Cir. 2023) (taking notice of factual allegations raised in a motion to appoint counsel for pro se plaintiff's benefit in a motion for leave to proceed in forma pauperis); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (relaxing the limitations on the amendment of pleadings).

Plaintiff's amended complaints allege a claim under Title VII of the Civil Rights Act of 1964 for sexual and retaliatory harassment.  Noting that there are two theories of discrimination pleaded, the court analyzes them in turn.

### A. Sexual Harassment

Title VII prohibits employers from discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment, "because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).   "The phrase terms, conditions, or privileges of employment evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment which includes requiring people to work in a discriminatorily hostile or abusive environment."  *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 2 (1993))

(internal quotations omitted).   "To defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Leketty v. City of New York*, 637 F. App'x 659, 661 (2d Cir. 2016) (citing to *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).   The "ultimate issue" in employment discrimination cases such is this is "whether the plaintiff has met [their] burden of proving that the adverse employment decision was motivated at least in part by . . . a discriminatory reason."  *Vega*, 801 F.3d at 87.   The United States Court of Appeals for the Second Circuit interpreted its earlier holding in *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), to suggest that "a plaintiff is not required to plead a *prima facie* case under McDonnell Douglas . . . to defeat a motion to dismiss."  *Vega*, 801 F.3d at 84.   "Rather, because a temporary presumption of discriminatory motivation is created under the first prong of McDonnell Douglas analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation."  *Id.*

It is established "without question," that when a supervisor sexually harasses a subordinate because of their subordinate's sex, that supervisor discriminates on the basis of sex.  *Id.* (citing to *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *see also Bostock v. Clayton Cnty*, 140 S. Ct 1731, 1747 (2020) (ruling that "sexual harassment" is conceptually distinct from sex discrimination, but that it can fall within Title VII's sweep).  Under this theory, the employer "violates Title VII when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment.'" *Deprey v. FedEx Freight, Inc.*, 3:18-cv-102(MPS), 2020 WL 1702335, at *5 (D. Conn. Apr. 8, 2020) (citing *Harris*, 510 U.S. at 21).  This theory of discrimination is referred to as the hostile work environment theory (or "discriminatorily abusive work environment").  *See generally Harris*, 510 U.S. 17.  To establish a claim of hostile work environment, a plaintiff must show that: 1) they were subject to harassment because of their membership in a protected class; 2) the harassment was so severe or pervasive as to alter the conditions of their employment; and 3) there is a specific basis for imputing the harassment to the defendant.  *See Deprey*, 2020 WL 1702335, at *5 (citing to, among other cases, *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

In proving that harassment was sufficiently severe and pervasive, a plaintiff must establish not only that he "subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010).  "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerned in order to be deemed pervasive.'"  *Id.* (citing *Alfano*, 294 F.3d at 374).  The court must consider the totality of circumstances and a variety of factors, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Blue v. City of Hartford*, 3:18-cv-974(CSH), 2019 WL 7882565, at *4 (D. Conn. Oct. 22, 2019).

With these principles in mind, the court finds that Plaintiff has failed to provide plausible support to his claim.

Although Plaintiff demonstrates, and the court does not underestimate, the toll that his working conditions have had on Plaintiff, the record is sparse on the nature and severity of the harassment itself.  *See* Resp. to Mot. to Dismiss 3, ECF No. 37.  Plaintiff references sexual harassment throughout his filings without a clear indication as to why he believes these actions are sexual in nature.  For example, in his amended complaint, Plaintiff raises a claim of "sexual overture on or around May 25th, 2020," without additional details concerning the individuals or conduct involved.  Amended Compl. #3, at 2.  In another example, Plaintiff lists in his exhibit an alleged instance of sexual harassment where "the postmaster says, 'I do not want to send these infractions up the ladder, maybe there is something we can work out'" without providing any additional context to the situation.  Incidents at Post Office Ex. A, at 1, ECF No. 37.  In yet a third example, Plaintiff alleges that Postmaster Lisa Millett has been carrying herself with the "intent to initiate contact" with Plaintiff.  Resp. to Mot. to Dismiss 2, ECF No. 37.  However, it is not clear from such allegations that the intended contact was sexual in nature.  *See Blue*, 2019 WL 7882565, at *11 (referencing contact with "sensitive areas of the body such as buttocks or breasts" as giving rise to an inference that the unwanted contact is sexual in nature); *Flowers v. N. Middlesex YMCA*, 3:15-cv-705(MPS), 2016 WL 1048751, at *4 (D. Conn. Mar. 11, 2016) (holding that "vulgar banter" riddled with sexual innuendo serves to prove the severity of the sexual harassment).  The court finds that, without specific factual claims, these allegations do not amount to more than "mere conclusory statements, [which] do not suffice" in withstanding a motion to dismiss.  *Ashcroft*, 556 U.S. at 678.

Other alleged instances of abusive treatment or harassment are even less sexual in nature.  To outline some of Plaintiff's other allegations of harassment:

- Plaintiff alleges that he was denied a position of "PTF" by Postmaster Millet. Amended Compl. #1, at 3.

- He separately alleges that he was "kept in freezing rain."  Resp. to Mot. to Dismiss 4, ECF No. 37.

- He claims that his truck was moved to "unauthorized locations throughout June."  Amended Compl. #3, at 3.

- He had an encounter with a customer on his route, where the customer was not satisfied with the placement of the delivered mail.  *See* Guilford Police Dep't Case/Incident Report, Ex. 5, ECF No. 29.

- He was the victim of workplace harassment in ways identified in the "Incidents at Post Office" exhibit.  Incidents at Post Office, Ex. A, ECF No. 37.

- He was told by his supervisor, Ana Anes, to "Do [his] job" while being addressed angrily with derogatory remarks.  Grievance Statement About 10/26/2021, Ex. K, ECF No. 37.

In asserting these factual allegations, Plaintiff does not reference the sex, or the protected class to which he belongs, let alone establish a sufficient connection between his sex and the conduct alleged.

These allegations, even when construed liberally and in the light most favorable to Plaintiff, do not establish "plausible support to a minimal inference of discriminatory motivation."  *Vega*, 801 F.3d at 84.  For these reasons, Defendant's motion to dismiss Plaintiff's claim of sexual harassment is granted.

### B. __Retaliation__

Title VII makes it unlawful "for an employer to discriminate against any of [their] employees . . . because [they have] opposed any practice made unlawful by this subchapter, or because [they have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "For a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action against—against [them], (2) because [they have] opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (citing to *Vega*, 801 F.3d at 90).

As to the first element, in the context of a Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (citing to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: 'The antiretaliation provision, unlike the substantive discrimination provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* (citing *White*, 548 U.S. at 57). Despite its broad range, however, "adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 85 (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). It is important to separate significant from trivial employment action, because Title VII does not set forth "a general civility code for the

12

American workplace." *White*, 548 U.S. at 68 (citing to *Oncale v. Sundowner Offshore Servs., Inc.*, 528 U.S. 75, 80 (1998)).

As to the second element, which is causation, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." 42 U.S.C. § 2000e-3(a). "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (internal quotations omitted). Unlike claims based on discrimination, in adverse retaliatory actions, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.2d at 90 (citing to *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–61 (2013). "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

### 1.   *Adverse Action*

It is unclear which of the alleged acts Plaintiff alleges to be retaliatory. For example, Plaintiff alleges that he was made to stand in "freezing rain" in December of 2016, for "informing the union of [his] sexual harassment concerns." Amended Compl. #4, at 3. However, Plaintiff did not provide any record regarding when he informed the union, or why he believes that this treatment was retaliatory in nature. There is no clarification regarding the timing of this treatment and when Plaintiff notified his union; Plaintiff used only half of the available lines provided on the complaint form (which instructs filers to list the facts describing their alleged discrimination, and also invites them

to "[a]ttach additional sheets, if necessary").  As another example, Plaintiff claims that Defendant engaged in "pay misconduct by moving [his] truck to unauthorized locations" and in "conduct that put [him] in personal and emotional danger" after he filed a "claim of sexual overture on or around May 25th, 2020."  Amended Compl. #3, at 2.  These conclusory allegations do not establish a presumption of retaliation.  *See Littlejohn*, 795 F.3d at 315–16 (outlining the elements required to "establish a presumption of retaliation at the initial stage of a Title VII litigation").  Separately, there is insufficient detail for the court to find that moving Plaintiff's truck from where it was parked rises to a level of retaliation which "could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Vega*, 801 F.3d at 91, and the specific conduct which put Plaintiff in "personal and emotional danger" also is unclear from the amended complaints.

However, the court finds one instance of a retaliation claim with supporting conduct that survives dismissal, though it is only clarified with detail (if not alleged for the first time) within Plaintiff's response to the instant motion, and not anywhere else within any of the several amended complaints.[4]  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (ruling that a "document filed *pro se* is to be 'liberally construed'") (citing to *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff claims that around May of 2021, he had "agreed with the accused to have 4 days at home [from Monday to Thursday] to concentrate on the formal investigation and to prepare for [his] EEO hearing."  Resp. to Mot. to Dismiss 6, ECF No. 37.  However, on

---

[4] Given Plaintiff's *pro se* status, factual allegations raised for the first time in response to Defendant's motion to dismiss may be considered when ruling on said motion.  *See Sealy v. State. Univ. of N.Y. at Stony Brook*, 834 F. App'x 611, 615–16 (2d Cir. 2020); *see also Canady v. U of R/Strong Mem'l Med. Ctr.*, No. 21-2150, 2022 WL 17825332, at *3 (2d Cir. Dec. 21, 2022) (looking to factual allegations raised in "opposition brief" when reviewing district court's dismissal of complaint).

Tuesday of that week, one of Plaintiff's supervisors (Ana Anes) left a voicemail for Plaintiff, instructing him that unless he did "all work at [his office]," his pay would be altered. *Id.* Indeed, his pay was altered and was not fixed until two pay cycles later. *See id.* at 3–4. Although this claim is raised for the first time in response to a motion to dismiss, Defendant does not contest the claim despite having an opportunity to do so in his reply. *See generally* Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 39.

Plaintiff's allegation—that he and his supervisor agreed for Plaintiff to take time off from work—stands on its own. Plaintiff points to a voicemail from Ana Anes instructing him to return to work or risk getting his pay altered,[5] but presents absolutely no evidence in support of this alleged agreement. *See* Resp. to Mot. to Dismiss 7, ECF No. 37. However, without any opposing contention from Defendant, the court must draw all reasonable inferences in favor of Plaintiff. *See Terry*, 336 F.3d at 138.

Left to presume there was an agreement between the parties, the court finds that this conduct satisfies the first element of a retaliation claim (adverse action), because it is plausible that the conduct could "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see Duplan*, 888 F.3d at 626 (ruling that "the burden for establishing a *prima facie* case of retaliation is 'de minimis'").

Though skeletal, these allegations satisfy the adverse action element of a retaliation action so as to survive dismissal, because, when construed liberally, *Erickson*,

---

[5] Plaintiff claims that this has been submitted as exhibit G, Resp. to Mot. to Dismiss 7, ECF No. 37, but the docket reflects no notices of manual filing, particularly for any thumbnail drives, which were submitted to the Clerk's Office. *See* U.S. Dist. Ct., Dist. of Conn., Electronic Filing Policies and Procedures 5-6 (2023), available at: https://www.ctd.uscourts.gov/sites/default/files/Electronic-Filing-Policies-and-Procedures-1-9-23.pdf [https://perma.cc/MW49-2GLC] (last visited Mar. 12, 2024) (explaining the manual filing process).

551 U.S. at 94, they allow the court to infer, beyond a "speculative level," *Nielsen*, 762 F.3d at 215, that Plaintiff has a right to relief, particularly as Federal Rule 8(a) does not require "any plaintiff—let alone a *pro se* plaintiff—to plead 'specific facts'" in order to survive a motion to dismiss. *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)

Plaintiff does not specify how much of his pay was affected in this instance; he states only that it took an additional "2 pay periods" for his payment to be corrected. Resp. to Mot. to Dismiss 7, ECF No. 37. However, the fact that Plaintiff's pay was corrected after the incident does not nullify his claim of retaliation. See *White*, 548 U.S. at 71–72 (holding that despite backpay, withholding pay in the first place had caused sufficient hardship for the plaintiff to sustain their retaliation claim). Furthermore, "reduction in pay" consistently has been recognized as a type of adverse employment action, or at least as a factor which goes to proof thereof. *See, e.g.*, *Banks v. Gen. Motors LLC*, 81 F. 4th 242, 275–76 (2d Cir. 2023); *Vega*, 801 F.3d at 91 (referring to the "temporarily reduced" pay as one of the factors in finding that a claim sufficiently had been raised for an adverse employment action); *John v. Walmart Store No. 2585*, 3:21-cv-1285(MPS), 2023 WL 2346577, at *3 (D. Conn. Mar. 3, 2023) (dismissing plaintiff's claim but noting that "reduction in pay" could have been a factor to establish adverse employment action); *Hubert v. Dep't of Corr.*, 3:19-cv-1323(VAB), 2020 WL 4938327, at *11 (D. Conn. Aug. 23, 2020) (noting that reduction in wage or salary may indicate adverse employment action). Moreover, the effect of this action is clear: Plaintiff describes his supervisor's conduct as a "painful tactic" which distracted him from engaging in protected activity. Resp. to Mot. to Dismiss 6, ECF No. 37.

The court particularly is disinclined to dismiss the action on the basis of this element because "'[c]ontext matters" in determining whether employers engaged in adverse action at all. *Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (citing *White*, 548 U.S. at 68–69). "[S]ome actions may take on more or less significance depending on the context." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011)). Therefore, it is more appropriate to reexamine this element when discovery has supplemented the allegation with the requisite context for this court to determine the merits of Plaintiff's claim.

## 2. *Causation*

The alleged conduct readily satisfies the second element of a retaliation claim. Reporting of harassment or discrimination to the EEOC clearly is a protected activity under Title VII. *See, e.g.*, Vega, 801 F.3d at 91; *Duplan*, 888 F.3d at 625. In this instance, the temporal connection between the protected activity and a temporary reduction in pay is similarly clear: on the second day that Plaintiff was to remain at home (as agreed), his supervisor left a voicemail demanding his on-site presence. Resp. to Mot. to Dismiss 6, ECF No. 37. Although the United States Court of Appeals for the Second Circuit "has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," the court finds that this conduct falls well within the boundaries set by this district. *See, e.g.*, *Bogden-Cozmuta v. Granby Urgent Care, LLC*, No. 3:20-cv-879(VLB), 2022 WL 4585442, at *8 (D. Conn. Sept. 29, 2022) (holding Plaintiff set forth a prima facie case of retaliation where alleged retaliation occurred one month after the protected activity); *Akiode v. Dominion Res. Servs., Inc.*, No.

16cv1588(WWE), 2018 WL 11485334, at *8 (D. Conn. Dec. 3, 2018) (holding that alleged retaliation three months after the protected activity also established a prima facia case). Defendant's alleged knowledge that Plaintiff would be taking time off precisely to engage in protected activity further bolsters the causation element. *See* Resp. to Mot. to Dismiss 7, ECF No. 37 (alleging that Plaintiff had agreed with his supervisor to take some time off "to concentrate on the formal investigation and to prepare for [his] EEO hearing").

In light of these factual allegations, the court finds that Plaintiff has established, "indirectly, by showing that protected activity was followed closely by discriminatory treatment" and "through other circumstantial evidence," that his employers engaged in retaliatory conduct in violation of Title VII. *Littlejohn*, 795 F.3d at 319 (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Defendant's motion to dismiss on this retaliation claim therefore is denied.

**V.   CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss is GRANTED in part and is DENIED in part:

   a. Defendant's motion is granted as to Plaintiff's claim of sexual harassment and hostile work environment in violation of Title VII.

   b. Defendant's motion is denied as to Plaintiff's claim for retaliation in violation of Title VII.

2. The parties shall continue or resume discovery in light of this ruling. Should either party seek an updated scheduling order to govern the remainder of this case, they shall file a motion requesting appropriate relief.

**IT IS SO ORDERED** in Hartford, Connecticut, this 12th day of March, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE